*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0085**

State of Minnesota,
Respondent,

vs.

Christopher Edward Coleman,
Appellant.

**Filed January 17, 2017
Affirmed
Halbrooks, Judge**

Olmsted County District Court
File No. 55-CR-15-4312

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his conviction of felony domestic assault, arguing that the state's uncorroborated and inconsistent evidence is insufficient to sustain his conviction. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Christopher Edward Coleman with two counts of stalking, in violation of Minn. Stat. § 609.749, subd. 4(b) (2014), and one count of felony domestic assault, in violation of Minn. Stat. § 609.2242, subd. 4 (2012). Coleman pleaded not guilty and waived his right to a jury trial, and the matter proceeded to a bench trial. Prior to trial, the state amended its complaint by adding a charge of fifth-degree assault, in violation of Minn. Stat. § 609.224, subd. 4(b) (2012). Separately, the district court granted the state's motion to amend its complaint by changing the date of the domestic-assault offense from "[o]n or about June 1, 2014" to "on or about April and/or May 2014." The district court held a three-day bench trial.

The district court acquitted Coleman of the two counts of stalking, and the state dismissed the fifth-degree-assault charge. The district court convicted Coleman of felony domestic assault and sentenced him to 33 months in prison. This appeal follows.

## DECISION

Coleman argues that, because the state failed to present clear and consistent testimony, the evidence is insufficient to support his conviction of domestic assault. "We use the same standard of review in bench trials and in jury trials in evaluating the

sufficiency of the evidence." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). We carefully review the record "to determine whether the facts and the legitimate inferences drawn from them would permit the [fact-finder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015). The evidence must be viewed "in the light most favorable to the verdict, and [we] assume that the fact-finder disbelieved any evidence that conflicted with the verdict." *Id.* The conviction cannot be overturned if the fact-finder "could reasonably have found the defendant guilty of the charged offense." *Palmer*, 803 N.W.2d at 733.

A person who "(1) commits an act with intent to cause fear in [a family or household member] of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon [a family or household member]" is guilty of a felony if the act was committed "within ten years of the first of any combination of two or more previous qualified domestic violence-related offense convictions." Minn. Stat. § 609.2242, subds. 1, 4 (2012). A "family or household member" includes "persons involved in a significant romantic or sexual relationship." Minn. Stat. § 518B.01, subd. 2(b)(7) (2012).

At trial, C.P. testified about "a choking incident" that took place in April or May 2014, which was approximately two weeks before Coleman was arrested for breaking down her door and breaking windows of a car parked in her driveway. C.P. was in a sexually intimate relationship with Coleman at the time of the incident, and she stated that Coleman was physically abusive to her. C.P. testified that she was in the living room

3

of her home when Coleman put his hands around her neck. She recalled trying to yell for help, but "nothing would come out" because "he was squeezing [her] neck too hard." She stated that she could not speak while he was squeezing her neck. C.P. also testified that her son, A.M., was present during this incident and that A.M. told Coleman to stop. C.P. stated that once Coleman saw A.M., Coleman let go. C.P. did not recall why Coleman put his hands around her neck, but she testified that he left a mark, it caused her pain or discomfort, and he made her feel afraid. She did not call the police immediately after this incident.

A.M., who was 15 years old at the time of the incident, also testified at trial. He stated that Coleman was dating his mother, C.P., in 2014. A.M. testified that sometime in April or May 2014 he witnessed Coleman grabbing C.P. around the neck, choking her for about five seconds. He testified that he saw C.P. crying. Coleman did not say anything when he had his hands around C.P.'s neck. But A.M. testified that Coleman stopped after A.M. asked what he was doing. The district court concluded that A.M.'s testimony was credible.

The state also introduced evidence of conduct pursuant to Minn. Stat. § 634.20 (2012). R.M. testified that she was in an intimate relationship with Coleman from 2006 until August 2013. R.M. specifically recalled two incidents with Coleman: In March 2008, Coleman put his hands around her neck. She did not remember if it caused her pain, but she remembered being afraid. In December 2008, Coleman picked R.M. up by the neck and slammed her onto the ground. She also testified about other incidents in

4

which Coleman either hit her or caused her to fear him. She stated that she did not want to testify at the trial because she feared what Coleman would do to her.

The district court also received a transcript from a different plea hearing, at which Coleman admitted pleading guilty to domestic assault in 2008 and two violations of no-contact orders in 2010 and 2011. The district court concluded that this evidence proved beyond a reasonable doubt the existence of Coleman's enhancing convictions.

The district court found Coleman guilty of felony domestic assault. It stated that Coleman is guilty because it "believe[s C.P.'s] account that [he] choked her[,] that this frightened her[,] and that it caused her pain." It found A.M.'s testimony that he "briefly saw [Coleman] with his hands around his mother's neck" credible. The district court also relied on R.M.'s testimony as evidence of conduct that "show[s] how [Coleman] has treated other family or household members, including other girlfriends" and "sheds light on how [he] interacts with those close to him, in turn suggesting how [he] may interact with [C.P.]." It inferred that Coleman had assaultive intent "from the nature of [his] attack on [C.P.]."

The district court concluded that Coleman and C.P. were in a significant romantic relationship, that he assaulted C.P. by "putting his hands around her neck and throat and squeezing, thereby choking her," and that he had the intent to either inflict bodily harm or cause C.P. to fear immediate bodily harm. It also determined that Coleman had three prior domestic-violence-related convictions within the last ten years, which raised the offense level of this domestic-assault charge to a felony. Coleman does not challenge the enhancing convictions.

5

Coleman argues that, because the district court concluded that C.P.'s testimony was not credible with respect to the stalking charges, her credibility was damaged and therefore insufficient to convict him of domestic assault. He also argues that A.M.'s "insubstantial testimony" and lack of physical corroboration call for a reversal of his conviction. We disagree. Even uncorroborated testimony from a single, credible witness can sustain a conviction. *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004).

Here, both C.P. and A.M. testified that C.P. was in a romantic relationship with Coleman at the time of the incident. Additionally, the district court believed C.P.'s testimony and determined that A.M.'s testimony that Coleman put his hands around C.P.'s neck was credible, which corroborates C.P.'s account of the incident. The district court also relied upon R.M.'s testimony, concluding that it "sheds light on how [Coleman] interacts with those close to him."

Because Coleman's conviction rests on testimony from two credible witnesses and other evidence of conduct, we conclude that a fact-finder could reasonably find that Coleman assaulted C.P., a person with whom he was romantically involved. Sufficient evidence exists to sustain Coleman's felony domestic-assault conviction.

**Affirmed.**